Mr. Rothblatt, nice to see you. Good morning, Mr. Shepard. Whenever you're ready. Good morning. May it please the court, counsel, my name is Adam Shepard and I represent the like to focus this morning on the issue of whether the government's computer in this case which downloaded the images that formed the basis for the transportation counts constitutes another individual under the law. That was the element that the jury was instructed on by the district court pursuant to the government's request. Mr. Shepard, you are not challenging the pattern instruction that was given, correct? Correct. Just the additional one defining transports? Yes, Your Honor. Okay. And there's four factors that I think distinguish this case from another individual. These four factors are in the record. Why does it matter though that the agent wasn't sitting at the computer? For the following reasons. That's the gap in the record. We don't know whether it was possible if the agent was sitting in the record to have completed the download. And I call the court's attention to the, there's a four second download, less than five seconds on another occasion that the computer was able to do it. Maybe the agent could have effectuated the download in that brief time, but maybe not. The record also shows that Mr. Siepman had told agents if he ever did see somebody attempting to download, he would try to exit out. The other reason having an agent sitting at the computer would be helpful is then perhaps the court would know whether another user other than the government could even locate the images in the first place. And this is based on the use of the hash values. And I'd like to call the court's attention to the testimony. He testified how a typical user finds a file through word terms. He gave an example of Marvel trailer looking for a Marvel movie. But we have no evidence in the record that the files in this case, the three files that form the basis for the transportation counts could have been located through regular search terms. So it's more than the fact that the agent didn't do this search manually. Right. Not only did the agent not do the search manually, he didn't press the download. So we don't know whether it was possible. And the government could have proved it. Is there a suggestion of the algorithm was that was complicated to the point that only a software would have been able to pull down these particular or even search for these particular images? That is the point. Because now these files had in the titles some common names. They're vulgar so I'm not going to repeat them. But they're in the record word search terms. So what the agent could have done, could have said, look, my computer hit on these with these hash values. Easy for me to prove that anyone could find them. Just put it, type in the names, the keyword searches. The government could then prove that another user other than a computer might have been able to even locate the images. And then the next step, the agent could have said, and then I would have been able to download them. But we don't have that in this case. I guess I'm trying to make the distinction between transport versus distribution. Yes. I think the case law instructs that distribution is a transfer of ownership versus transport. A lot of the case law turns to the dictionary definition which is to convey it to another place or to carry it to another place or person. But the reason that didn't happen. So is your argument that looking at the jury instruction, once it's uploaded to the peer-to-peer, that's not transporting? That's not transport. The Clark case instructs, which the government and district court relied on, would be for another individual to have downloaded. That completes the crime of transportation. But Clark didn't say another individual. The exact language from Clark was that downloading by other users of the network, Your Honor. The court is correct. The language was that downloading by other users of the network completed the commission of the offense. Would we be creating a circuit split with Clark if we agree with you? I don't think so because Clark is also a distinguishable on some other grounds. But would we be creating a circuit split on the jury instruction issue? Our position on the jury instruction issue was that, yes, the jury should have been able to accord transport its ordinary definition. We didn't propose an alternative definition for transport, nor do the pattern instructions. But the instruction that was given here was essentially identical to the instruction at Clark, correct? And the Second Circuit approved the instruction at Clark. So my question to you is not whether or not something different should have been given, but if we agree with you, are we creating a circuit split with the Clark case on the jury instruction issue? No, Your Honor, because the issue really in Clark was on the sufficiency of the evidence. I don't think the court squarely addressed the question of the jury instruction, which was for this court now. So for that instruction number 18, that supplemental instruction, another individual language, you think it's even necessary? I do, Your Honor, based on the language in Clark and based on the other cases that we cited, they refer to another person and in all the cases that... Would that be true in all transportation charge cases? Only in cases in a peer-to-peer network. There are some cases, for instance, I think it was the Davis decision that a court gave an example of a defendant downloaded a child pornography to a USB drive and drove it to a different location, another state. But look, going back to the peer-to-peer examples, file sharing, I'm thinking of the United States v. FALA, the Fourth Circuit, or the Ninth Circuit, where the individual, I guess, to another person was not required. I would distinguish those cases. Number one, FALA was uploading it. The defendant was doing the uploading and completing it to himself in a Dropbox. That's different. Here we have a government computer procuring, taking the images from the defendant's computer. There the defendant's doing both actions. But the defendant... Didn't the evidence here show that the defendant... I'm going to use... I'm not going to be... Use super technical language. Essentially put the files in an outbox or in some portal of Shareeza where another computer or another person using a computer could come, express an interest in obtaining that, and the defendant's application would effectively release it to that solicitor. That part, Your Honor, about the releasing it, I have to take a little bit, draw a distinction on that because, for instance, in Clark, they had the... It was part of a law enforcement affidavit where they said they tested the defendant's shared folder to see if the images, which formed the basis for the transportation count in that case, were accessible to others, and they were. That's not... That's a gap in the record as well in this case. The actual images weren't recovered from the defendant's devices. They were apparently through a folder path... I thought the defendant's settings, if you will, were part of the evidentiary record. The settings that the defendant... How he configured Shareeza on his end. Allowed or arguably allowed others to access, but the key part for transport, and this is where I'm going to distinguish transport too from distribution, is then the subsequently downloading. Just because someone may have been able to view his images, that is another crime by another user accessing with the intent to view it, but it doesn't complete the transportation unless there is a download, we think, by another person. I think the court's question was whether the defendant had put the files in there. The record is silent as to that. The settings, yes, they were configured in a way that arguably those images could have been procured only by the government computer because there was no evidence whatsoever that anybody else... Yeah, but there's not evidence that this computer has no connection to the defendant. The defendant had no idea that there were these kinds of images, right? He made some statements post-arrest that, no, he said, yeah, absolutely, it's my computer, et cetera, et cetera. No question about that. The question that was raised was whether he was sharing files. It wasn't whether he was sharing child pornography files, he was sharing files in general. Additionally, there was no question posed to him about the three particular files that formed the transportation counts. Thank you, I see him. No, we'll give you a minute of rebuttal. Thank you. No problem. Okay, we'll hear from the government. Mr. Rothblatt. May it please the court, my name is Richard Rothblatt and I represent the United States. At trial, the district court properly instructed the jury regarding the conduct sufficient to constitute transportation of child pornography in the context of peer-to-peer file sharing technology. First, the district court did not abuse its discretion when it determined that an instruction was necessary in light of the complex nature of peer-to-peer file sharing and the instruction it gave was a fair and accurate recitation of the law based on this court and other courts' precedents in other sister circuits. Moreover, the district court properly denied defendant's motion for a judgment of acquittal. The government introduced sufficient evidence to establish that an individual downloaded the child pornography from defendant's when we were looking at this transportation element, that there was not a requirement that the transporter, on the other end, that someone received the goods. And so here, following this instruction, the jury instruction that was provided here, did we not add to a requirement of the government that on the other end, after they're uploaded, that there is a receiver on the other end? Yeah, Judge, the Hyatt decision relates to distribution in the first place. I'm aware. Yeah, so this court said that there was no evidence of distribution where a file was uploaded but not downloaded by another user. And so that goes back to my question. The instruction that was given, did we not follow kind of the distribution cases versus our transportation cases outlined in U.S. v. Davis? Yeah, Judge, I think the difference between Davis and this case is the peer-to-peer file sharing nature of this. So just to be clear with some of the terminology, in this case, defendant maintained this client that enabled peer-to-peer file sharing. And what he had, per Judge Scudero's question previously, was a separate folder on his computer that enabled those files to be transported to move to another user, another individual, anywhere in the country, anywhere in the world. But those files never physically left. They weren't being moved in the common parlance of transportation. They weren't being driven across a border. They were, and he was enabling users around the world to connect to his computer directly and take those files. So it's a little different than the Davis context of transportation. Yeah, very familiar of how share-to-share works. Yes, Judge. I think the reason here that transportation may require movement to another individual or place, and the reason to another individual was included in the instruction, is just because in the context of peer-to-peer file sharing, transportation may require some form of a distribution, some form of movement to another person or place. And that was what the instruction was attempting to convey. So what we would say here, what I'm hearing from the government is moving it from his hard drive to the peer-to-peer file on his computer would not have satisfied the transportation. Any kind of movement would have satisfied that requirement. The addition here of to another individual was maybe extra language that kind of played along with the jury's understanding of who uses peer-to-peer file sharing networks and how people are the ones who are downloading those materials. You're not saying, though, that just putting it on the peer-to-peer or in the share file would be sufficient for transportation, are you? No, Judge. That's correct. That's why the language here was added. I think the court was talking about Clark previously. On the Second Circuit, and first off, just to clarify, the instruction there in Clark demanded less than the instruction here that we asked for before the district court. The court found, though, and the Second Circuit found, that you do need to have it completed by movement to another individual or another user. But the instruction was sufficient, the evidence was sufficient. And to your question previously, Judge Saini, I do believe that if this court were to find that the court improperly instructed the jury regarding transportation, there would be a circuit split. This would be a direct contrast from the Second Circuit's view on what transportation means in the context of peer-to-peer file sharing. So what I hear you saying is that in the overall scheme of transportation cases, where the government charges transportation, that the instruction should connote movement to either a person or a place. That's correct, Judge. As opposed to movement in the abstract, whatever that would even mean. That's correct, Judge. So if it's somebody that's driving across the state line, you know, Mr. Shepard hypothesized then it would probably be movement to a place. In this particular case, you knew, both sides knew because of what the evidence, how the evidence was previewed that you're talking about moving it to another person. It just so happened to be a law enforcement officer. That's exactly right, Judge. In defense counsel's opening statement, they previewed that there was going to be no dispute about the possession. But the issue for the jury to consider is another defendant sitting in his basement in his home with a computer using a peer-to-peer file sharing program and maintaining a folder with child pornography on it, whether that's actually transportation when he never physically left his basement and pressed click that said, okay, I agree that these files are unable to move. So this was the issue, the critical issue for the jury to consider. It was plain that an instruction was necessary in the context of a more complex technological case as opposed to someone physically driving a truck of child You didn't have to have a fact pattern where he pushed send or release on an icon because he configured the file sharing to do just that when it was pinged or solicited or whatever the right word is. That's exactly right, Judge. The settings were such that an individual could access materials from his shared folder and download them. And the expert witness from the government, Task Force Officer Jeffrey Rich, walked through a video demonstration for the jury showing what the defendant would have seen when he was establishing this exact version of ShareRaza. So it was clear to the jury and plain to the jury that he knowingly made these files available for download based on the way the settings were configured. And didn't he make a post-arrest statement that he was aware of how all this stuff worked? Yes, Judge. I mean, he's trained. He's not clueless on IT, right? He actually works in the IT space. He worked in information technology. A witness testified, his supervisor testified that he had above average knowledge about technological issues, including peer-to-peer file sharing. So this was all familiar to him. He did tell the law enforcement official in a post-arrest interview that he understood that ShareRaza was being used to share files and he had knowingly shared files before. In contravention of one thing that defense counsel said just in argument, Mr. Seatman, the defendant, did not tell law enforcement officials that every time he observed something and trying to download, he would stop it. What he said was that on occasion he had done that in the past. But still, in the settings that he had established, he enabled others to download from him. And that was plain to the audience. Did he say something like he turned it off when his son was present or something? He told law enforcement officials that he would close the program when his son would use the computer just because he didn't want anyone sharing files at that point, because he knew his son was using it for video gaming purposes. So unless there are any other questions from the court, the government would ask that the court affirm the district court's ruling and find that the instruction was appropriate and the evidence was sufficient. Okay. Mr. Rothblatt, thank you. Mr. Shepherd, you're welcome to come back. I'll give you a minute on rebuttal. Thank you. Just going back to the point about Clark, the precise question there was whether the defendant had to actively transport it. That was the defendant's request in that case. We're not suggesting that. There can be, arguably on a pair-to-pair, a passive transport when there's another individual on the other end carrying the images. But we don't have that in this case. And that's different than Davis. In Davis, not only did he post a shutterfly, but the court detailed he was directly communicating or directly posted it to another individual, somebody with a different screen name. He had posted over 20,000 times in that case. We don't have that in this case. We have the evidence that the defendant attempted not to transport it to any other individuals. Maybe he left it on. Maybe he missed a few times. But that's the distinction. There is no intent here and no individual on the other line. So, with that, I would address. Thank you. Okay. Mr. Shepard, thanks to you. You took this case on assignment, correct? The appeal I did, yes. Yeah, we very much appreciate that. You've served Mr. Seitman well and the court as well. We appreciate you taking the case. Mr. Rothblatt, Mr. Kerwin, thanks to the government as well as always. That concludes this morning's argument. We'll take this appeal under advisement and be in recess.